IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BRIDGEFIELD CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff/Counter Defendant, | ) ) |
| v. | ) ) |
| SHOCKLEY BOYS CONTRACTING, LLC | ) ) ) ) |
| Defendant/Counter Plaintiff. | ) |

No. 1:24-cv-01216-STA-jay

### ORDER PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Bridgefield Casualty Insurance Company filed this action in the Chancery Court of Carroll County, Tennessee, against Shockley Boys Contracting, LLC. Plaintiff seeks a declaration that it does not owe workers' compensation insurance coverage, indemnification, benefits, or any other obligation to Defendant or Defendant's employees for damages arising from an automobile accident that occurred on June 3, 2024. (ECF No. 1-2.) Defendant removed the action to this Court based on diversity of citizenship, 28 U.S.C. §1332. Defendant then filed an answer and counter complaint for declaratory judgment (ECF No. 6) asking the Court to determine that Plaintiff is required to provide workers' compensation coverage for Defendant's employees injured in the June 3, 2024 automobile accident. Defendant also seeks attorney fees, expenses, and a 12% penalty pursuant to Arkansas Code Annotated § 23-79-208.

Defendant has filed a motion for summary judgment (ECF No. 17), and Plaintiff has filed a cross motion for summary judgment. (ECF No. 19.) Plaintiff has responded to Defendant's motion (ECF No. 25), and Defendant has responded to Plaintiff's motion. (ECF No. 23.) The

parties have each filed a reply to the respective responses. (ECF Nos. 27, 28.) For the reasons set forth below, Defendants' motion is **PARTIALLY GRANTED** and **PARTIALLY DENIED**, and Plaintiff's motion is **DENIED**.

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Material Facts

Pursuant to the Local Rules of this Court, Defendant has prepared a statement of material undisputed facts (ECF No. 18) "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Plaintiff has responded to Defendant's statement. (ECF No. 24.) Plaintiff submitted its own statement of facts (ECF No. 19-1) to which Defendant has responded. (ECF No. 23-3.) Defendant also submitted a statement of additional facts. (ECF No. 23-4.) Plaintiff has responded to Defendant's additional facts. (ECF No. 26.)

A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must respond to the movant's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). Additionally, the non-movant may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If the non-movant asserts that a genuine dispute of material fact exists, it must support its

3

contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In the present case, both parties object to certain portions of the opposing party's statement of facts. The Court finds that there is no genuine dispute as to the following material facts, unless otherwise noted.[1]

This lawsuit stems from an automobile accident involving employees of Shockley Boys. On June 3, 2024, ten employees were traveling in a van owned by Shockley Boys to a farm in Huntingdon, Tennessee. As the van was turning into the entrance of the farm, it was struck by another vehicle traveling in the opposite direction. The employees suffered bodily injury, and one employee died as a result of the automobile accident.

Shockley Boys Contracting, LLC is a limited liability corporation with a principal office in Tontitown, Arkansas. Dustin Shockley is the owner, and Stephanie Shockley is the office coordinator. Shockley Boys is a chicken-catching business that sends workers to chicken farms to

---

[1] The parties have not disputed some facts and state that other facts are disputed only for the purpose of the Court's deciding the motion for summary judgment. At other times, a party has noted that a particular statement does not contain material facts that must be decided to resolve any substantive claim or defense at issue but that the statement is undisputed for purposes of ruling on the parties' competing motions for summary judgment. All facts are stated for the purpose of deciding this motion only.

hand-catch chickens to be sent for processing. It has workplaces located in Arkansas and Kentucky.

Prior to the June 3, 2024 accident, Bridgefield issued to Shockley Boys Workers Compensation and Employers Liability Insurance Policy 196-35164 with effective policy dates of August 13, 2023, to August 13, 2024. Policy No. 196-35164 was managed for Bridgefield by Summit Consulting, LLC.

Policy No. 196-35164 was obtained by Shockley Boys with the assistance of Shockley Boys' insurance agent Roy Glenn Fears whose office is located in Springdale, Arkansas. Shockley Boys was not involved in the writing or drafting of Policy No. 196-35164. Policy No. 196-35164 was delivered to Shockley Boys in the State of Arkansas.

Shockley Boys Contracting promptly reported the June 3 accident and its location and requested payment of benefits to its employees under Policy No. 196-35164.

On June 4, 2024, the day after the accident and the day the accident was reported by Shockley Boys, Jamacah Lett of Summit Holdings sent an e-mail to Stephanie Shockley requesting information about the accident and the injured workers. Also that same day, Wendie McKenzie of Summit Holdings sent correspondence to Stephanie Shockley requesting information about the accident and the injured workers.

On June 5, 2024, Wendie McKenzie sent correspondence to Stephanie Shockley containing a June 5, 2024 news article from a local Tennessee newspaper regarding the June 3, 2024 accident in Tennessee; three Summit Holdings employees were identified as e-mail sender and/or recipients.

On June 12, 2024, Stephanie Shockley answered questions from Kathrine Morrison of Summit Holdings as part of Bridgefield's claims investigation of the accident.

On June 13, 2024, Stephanie Shockley spoke with Grant Heston, a payroll auditor for Summit Holdings, who requested payroll records as part of the year-end audit. Shockley Boys

5

produced the records.

On June 17, 2024, Stephanie Shockley spoke with Sheila Hall, a field claims adjuster for Summit Holdings, as part of Summit Holdings' claims investigation. That same day, Sheila Hall sent a list of written questions to Shockley Boys as part of the claims investigation.

On June 19, 2024, Stephanie Shockley again spoke with Shiela Hall as part of the Summit Holdings' claims investigation. Hall sent additional questions to Shockley Boys as part of Summit Holdings' claims investigation.

On June 25, 2024, Stephanie Shockley met with Hall at an IHOP restaurant in Arkansas as part of Summit Holdings' claims investigation.

On June 28, 2024, Summit Consulting acknowledged receipt of additional information from Shockley Boys as part of the year-end audit and requested additional documentation from Shockley Boys.

On July 9, 2024, Grant Heston of Summit Consulting informed Shockley Boys that the year-end audits of Shockley Boys as described in the subject policy were complete.

As office administrator for Shockley Boys, Stephanie Shockley has been involved in assisting with year-end audits of Shockley Boys conducted by insurance companies providing coverage to Shockley Boys since Shockley Boys began work in 2009.

In July 2024, Stephanie Shockley assisted Summit Holdings on behalf of Bridgefield in performing the year-end audit of Shockley Boys for the coverage year which began on August 13, 2023. As part of that year-end audit, Stephanie Shockley provided Summit Consulting with information related to payments made to Shockley Boys employees who had started performing work in Tennessee after the August 13, 2023 policy coverage date. This information included employees injured in the June 3, 2024 accident.

No employees of Shockley Boys were working at any Tennessee location on August 13, 2023, the effective date of Policy No. 196-35164. No employees of Shockley Boys were working at any Tennessee location during an audit performed by Bridgefield in September 2023.

Shockley began working in Tennessee after the policy went into effect on August 13, 2023. Prior to June 3, 2024, Shockley did not provide notice to Bridgefield that it was working in Tennessee.

Bridgefield has alleged as a basis for denial of coverage that Shockley Boys began operations in Tennessee in March of 2024 without providing Bridgefield notice that Shockley Boys "was doing business in Tennessee prior to the June 3, 2024 accident." Bridgefield did not discover these facts until after the accident occurred on June 3, 2024. As stated in the Audit Summary, dated July 8, 2024: "Due to a claim during the policy period we discovered that they also perform work in Tennessee. Audit contact [Stephanie Shockley] stated that they started working in Tennessee in early 2024." (ECF No. 18-3, PageID 581).

After being notified of the accident, Bridgefield paid medical bills while investigating its liability for workers' compensation benefits. Specifically, Bridgefield paid initial medical bills totaling $30,512.31 for the injured workers "in good faith" while investigating its liability for workers' compensation benefits.[2] During the investigation and handling of the claim by Bridgefield, questions arose regarding the availability of coverage under the policy.

Shockley Boys paid benefits to multiple injured and/or deceased employees, including medical bills and expenses, funeral expenses, and temporary disability employee wages, for

---

[2] Shockley Boys contends that, after the July 30, 2024 correspondence, Bridgefield refused to pay any additional workers' compensation benefits for the employees involved in the June 3, 2024 automobile accident. Bridgefield counters that it made payments as recently as April 2025. The Court need not resolve this dispute to decide the cross motions.

several months.

Shockley Boys contends that it had no knowledge of any employee involved in the June 3, 2024 accident being an undocumented or illegal alien in the United States. Prior to the June 3, 2024 accident, all of the injured employees provided Shockley Boys with signed Federal W-9 tax forms.[3]

On or about June 14, 2024, Bridgefield sent to Shockley Boys "NOTICE OF TERMINATION OF WORKERS' COMPENSATION INSURANCE," stating that coverage would be discontinued "because your business falls outside the parameters we have established for Bridgefield Casualty." The June 14, 2024 notice did not inform Shockley Boys that Bridgefield was refusing or would refuse to provide workers' compensation benefits to the injured Shockley Boys employees under Policy No. 196-35164. That is, the June 14, 2024 notice and accompanying letter only addressed the issue of termination of coverage under the policy and did not specifically address the June 3, 2024 accident or workers' compensation claims related to the accident.

Summit Holdings, on behalf of Bridgefield, sent a letter dated July 30, 2024, to Shockley Boys. The words "PROMPT ACTION REQUESTED" were displayed at the top of the letter in boldface and underlined for emphasis. Bridgefield requested prompt action and additional information from Shockley Boys. The letter stated: "[Bridgefield] previously accepted the above-referenced workers' compensation claims in good faith and paid for medical expenses incurred by the above refenced individuals for injuries suffered during the June 3, 2024 accident. As of the date of this letter, the benefits paid for these claims total $30,512.31. However, based on the facts we have uncovered through our extensive investigation, it is our position that there is no coverage

---

[3] The parties have not raised the issue of the injured employees' immigration status in their motions.

8

for the above-referenced Tennessee workers' compensation claims afforded under policy number 0196-35164."

The letter concluded, in part: "If you disagree with our position on coverage as outlined above, and have additional information and/or documentation to present us in furtherance of your position, please provide this information and/or documentation to [Redacted contact information] no later than the close of business on Monday August 5, 2024. After review of any additional information and/or documentation you provide in response to this letter, we will promptly notify you if coverage of the above-referenced claims has been accepted or denied." No additional information or documentation was received by Bridgefield.

Applicable Provisions of Policy No. 196-35164 (ECF No. 18-1)

In the GENERAL SECTION OF THE POLICY, the policy is identified "as a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page), and the "only agreements relating to this insurance are stated in this policy."

As a requirement for workers' compensation coverage, the "bodily injury by accident must occur within the policy period."

In Section B We Will Pay of Part 1 of the Workers' Compensation Insurance Portion of the policy, Bridgefield agreed to the following:

We will pay promptly when due the benefits required of you by the workers' compensation law. The Policy defines "workers' compensation law," in relevant part, to mean "the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page."

In the "WORKERS' COMPENSATION EMPLOYER'S LIABILITY INSURANCE

9

POLICY INFORMATION PAGE" ("Policy Information Page"), Item 3. Coverage states the following in Section A:

Workers' Compensation Insurance: Part 1 of the Policy applies to the Workers' Compensation Law of the states listed here:

Kentucky, Arkansas.

Section C provides:

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

Alabama Georgia Mississippi North Carolina Texas Florida Virginia Oklahoma Tennessee South Carolina Indiana Louisiana.

PART THREE – OTHER STATES INSURANCE states the following regarding work done in the "other states" identified in Item 3.C (including Tennessee):

A. How this insurance applies.

1. The other states insurance applies only if one or more states are shown in item 3.c of the information page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in item 3.a. of the information page.

3. We will reimburse you for the benefits required by the workers' compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.a. of the information page, coverage would not be afforded for that state unless we are notified within 30 days.

B. Notice

Tell us at once if you begin work in any states listed in Item 3.c. of the Information Page.

The final premium for the coverage year would be determined after the coverage year

ended, and Shockley Boys agreed to pay any premium adjustment for the previous coverage year demanded by Bridgefield post-audit:

> The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.
>
> G. Audit
>
> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audit during regular business hours during the policy period and within 3 years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

<u>Background/Analysis</u>

This is a declaratory judgment action to determine whether a workers compensation insurance policy issued by Bridgefield affords coverage for work-related injuries resulting from an automobile accident in Tennessee involving the employees of the insured, Shockley Brothers. Bridgefield argues that no coverage is available because Shockley Boys did not inform Bridgefield of work being performed in Tennessee "at once" as required by the policy. Shockley Boys responds that the "at once" notice provision in the policy cannot be used to deny coverage.

The parties agree that a federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). In contract disputes, Tennessee follows the rule of *lex loci contractus*; that is, "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006); *see also Charles*

*Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W. 3d 482, 485 n.1 (Tenn. Ct. App. 2006) (stating that, in Tennessee, absent a valid choice of law provision, the obligations under an insurance policy "are governed by the law of the state where the insurance policy was made and delivered.") Here, the policy was executed, issued, and delivered to Shockley Boys at its principal place of business in Tontitown, Arkansas. Thus, this Court must look to Arkansas law to interpret the provisions of the policy.

Arkansas law regarding construction of an insurance contract is well settled. *Castaneda v. Progressive Classic Ins. Co.*, 66 S.W.3d 556, 560 (Ark. 2004). "[I]nsurance policies are to be construed liberally in favor of the insured, and exclusionary language that is susceptible to more than one reasonable interpretation should be construed in favor of the insured." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 986 (8th Cir. 2004) (citations omitted). "Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage." *Id.* (citation omitted).

> [T]he intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer. If the language in a policy is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two or more interpretations — one favorable to the insured and the other favorable to the insurer — the one favorable to the insured will be adopted.

*Fulton v. Beacon Nat. Ins. Co.*, 416 S.W.3d 759, 762 (Ark. Ct. App. 2012) (footnote citations omitted). *See also U.S. Fidelity and Guar. Co. v. Continental Cas. Co.*, 150 S.W.3d 556, 560 (Ark. 2003) (same). Whether the language of the policy is ambiguous is a question of law for the Court. *Corn v. Farmers Ins. Co.*, 430 S.W.3d 655, 660-61 (Ark. 2013).

In construing the terms of a policy, the Court is mindful that the policy must not "be rewritten under the rule of strict construction against the company issuing it so as to bind the

insurer to a risk which is plainly excluded and for which it was not paid." *Id.* (citations omitted). Accordingly, "[t]he provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (citation omitted). If language of an insurance policy is unambiguous, the plain language of the policy is used. *Castaneda*, 66 S.W.3d at 560-61 (citation omitted).

Additionally, "Arkansas courts apply the general rule that [when] an insurance policy provides that the giving of notice of a loss, claim, or lawsuit is a condition precedent to recovery, the insured must strictly comply with the notice requirement, or risk forfeiting the right to recover from the insurance company." *Fireman's Fund Ins. Co. v. Care Mgmt., Inc.*, 361 S.W.3d 800, 803 (Ark. 2010). "The insurance company need not show that it was prejudiced by any delays in or lack of notification" if the requirement is a condition precedent. *Id.* On the other hand, if notice is not a condition precedent to recovery, the insurance company must show it was prejudiced by the delay in notice. *Id.* at 10. "In order for timely notice to be a condition precedent to coverage, the insurance policy *must* use language *expressly* to that effect or language that *necessarily* implies that the provision is a condition precedent." *Lawrence*, 358 F.3d at 986–87 (emphases added; citations omitted).

The question for this Court is whether the notice provision in this case ("tell us at once") was a condition precedent to recovery. If so, the undisputed facts show that Shockley Boys did not tell Bridgefield "at once" that it was working in Tennessee and Shockley Boys cannot prevail. However, if the notice provision was not a condition precedent, then Bridgefield must show that it was prejudiced by the delay in receiving notice in order to deny recovery.

The Court finds as a matter of law that the "tell us at once" language in the policy is

13

ambiguous.

> Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. If the language of the policy is susceptible to two interpretations, one favorable to the insured and one favorable to the insurer, then the interpretation most favorable to the insured must be adopted. If a reasonable construction can be given to the policy that would justify recovery, it is the court's duty to do so.

*See, e.g.*, *S. Pioneer Prop. & Cas. Ins. Co. v. Sharrah*, 688 S.W.3d 184, 189-90 (Ark. App. 2024) (citations omitted). The "tell us at once" language is neither an express condition precedent nor does it "necessarily implies that notice is a condition precedent." *Clark v. S. Farm Bureau Cas. Ins. Co., Inc.*, 487 S.W.3d 402, 404 (Ark. App. 2016) (citations omitted). The *Clark* Court illustrated this distinction by reference to *Vaughn v. Shelter Mut. Ins. Co.*, 382 S.W.3d 736 (Ark. App. 2011).

> There, one notice provision in an insurance policy stated that the insured had a duty to provide her insurer with suit papers immediately upon filing. We ruled that this provision did not constitute a condition precedent to coverage because "the plain wording of the policy does not condition coverage on fulfilling this condition." 2011 Ark. App. 208, at 7–8, 382 S.W.3d at 741. By contrast, we ruled that a separate provision, which required the insured to give notice of a tentative settlement with an underinsured motorist, was a condition precedent. In doing so, we relied on policy language under the heading "Exclusions," which stated that UIM coverage "[did] not apply" to damages for which the insured had released an underinsured motorist without giving the required notice of settlement. We also cited a second policy provision, which read that, if the insured chose not to give notice of her settlement with an underinsured motorist, then "no insurance is provided under this coverage."

*Clark*, 487 S.W.3d at 404. Likewise, in the present case, "the policy provision does not expressly state or necessarily imply that … coverage is conditioned on [Bridgefield's] receiving such notice. The policy language falls short of declaring, as the policy did in *Vaughn*, that coverage will be completely forfeited or excluded if such notice is not given." *Id.*

In particular, the Court notes that the policy expressly provides that, as part of the "other states coverage," if the insured, in this case Shockley Brothers, employs workers in one of the

other states, including Tennessee, on the effective date of the policy, it must inform the insurer, in this case Bridgefield, within thirty days or risk losing coverage. ("If you have work on the effective date of this policy in any state not listed in Item 3.a. of the information page, coverage would not be afforded for that state unless we are notified within 30 days.") This provision both defines when notice must be given (30 days) and states the consequence of not giving notice (coverage would not be afforded that state). In contrast, the next provision directs the insured to "[t]ell us at once if you begin work in any states listed in Item 3.c. of the Information Page" – that is if the insured began working in, *inter alia*, Tennessee after the effective date of the policy. This provision neither specifically defines when notice must be given nor does it state that coverage will not be provided if notice is not given. While the ordinary meaning of "at once" could mean "immediately," reading the policy as a whole in light of the immediately prior provision specifically defining a time period (30 days), the Court cannot find that Shockley Brothers' failure to give notice of its work in Tennessee until after the accident invalidates coverage for that accident, especially since the policy must be liberally construed in favor of Shockley Brothers, the insured. *S. Pioneer Prop. & Cas. Ins. Co.* 688 S.W.3d at 189.

> As explained in *Hope Spoke Co. v. Maryland Cas. Co.*, 143 S.W. 85 (Ark. 1912),
>
> But it is significant that the preceding paragraph, declaring the liability of the insurer for loss from the accident itself, does not refer to a notice, nor use any language indicating that such liability depends on the giving of notice; nor is the paragraph providing the notice couched in language for much an intention to make it a condition of recovery can be implied. Under the maxim, "expression unius est exclusion alterius," the fact that a condition is expressed in one of the clauses of a contract excludes the idea that an unexpressed condition was intended to be declared in another clause.
>
> The language of the policy is that of the insurer, and, when it is doubtful or ambiguous, must be given the strongest interpretation against the insurer which it will reasonably bear.
>
> Chief Justice Fuller, speaking for the Supreme Court of the United States in

> *McMaster v. New York Life Ins. Co.*, 183 U.S. 25, 22 Sup. Ct 10, 46 L. Ed. 64, said
> that "the rule is that if policies of insurance contain inconsistent provisions or are
> so framed as to be fairly open to construction, that view should be adopted, if
> possible, which will sustain rather than forfeit the contract."

143 S.W. at 86-87 (some citations omitted).

      Here, the express notice condition with cancellation consequences (Section A.4.) and the unexpressed condition with no expressed cancellation consequences (Section B.) are placed directly together. That is, the "30-day notice" requirement for work ongoing at the effective date of the policy is directly above and contrasted with the "at once notice" requirement in Section B which does not contain the same denial of coverage language that the paragraph A.4. includes. Under the maxim "expressio unius est exclusion alterius," an "unexpressed" consequence (coverage denial) for failure to provide notice which could have been included in Section B but was not and was, in fact, included in the paragraph directly above it in Section A.4. cannot be read into Section B. Accordingly, the Section B notice provision cannot be used to deny coverage to Shockley Boys and deny benefits to the injured Shockley Boys employees.

      Another provision in the policy that supports this finding is the requirement that, at the end of the policy period, Shockley Brothers and an auditor on behalf of Bridgefield confer and determine if Shockley Brothers must pay an additional premium for work done in additional states such as Tennessee. As part of the year-end audit for the coverage year beginning August 13, 2023, Shockley Brothers provided information related to payments made to their employees during the coverage year, and an audit summary provided by Bridgefield included those employees. Adjustments were then made to the initial premium paid by Shockley Brothers for additional work done during the previous coverage year that was not contemplated in the original premium paid at the beginning of the coverage year ("If the final premium is more than the premium you paid us,

you must pay us the balance.")

Bridgefield could have included in the policy clear, express, and unambiguous language requiring notice of work done in Tennessee within a specified time with a statement as to the consequence(s) if that notice was not provided. It did not do so. Instead, it used the ambiguous phase "tell us at once" and did not include a consequence for not providing "at once" notice. Accordingly, the Court cannot find that the this language was a condition precedent for coverage.

Even though the Court has found that notice was not a condition precedent to "other states" coverage under Part Three and will grant that part of Shockley Brothers' motion for summary judgment, Bridgefield must still be afforded the opportunity at trial to show that it was prejudiced by Shockley Brothers' failure to provide notice until after the accident occurred. *See Fireman's Fund Ins. Co.*, 361 S.W.3d at 805 ("[I]f notice is not a condition precedent, the insurance company must show it was prejudiced by any delay in notice in order to be relieved of liability.") The non-jury trial currently set for trial on November 24, 2025, will proceed on that issue.[4]

If the Court finds in favor of Shockley Brothers on the prejudice issue, the Court will allow further briefing on the issue of whether Shockley Brothers is entitled to attorney fees and the bad faith penalty pursuant to Arkansas Code Annotated § 23-79-208.

In summary, Shockley Brother's motion for summary judgment is **PARTIALLY GRANTED** and **PARTIALLY DENIED**. The motion is granted to the extent that the Court finds that the notice provision was not a condition precedent to recovery. The issue of whether Bridgefield was prejudiced by the delay in notice will be tried on November 24, 2025. Bridgefield's motion for summary judgment is **DENIED**. The Court will hold in abeyance the

---

[4] Should the parties decide that the issue of prejudice can be decided on the briefs without the necessity of a trial, they must file a joint notice to that effect within seven days of the entry of this order.

issue of Shockley Brothers' request for attorney fees and the bad faith penalty until a decision is made on the prejudice issue.

    IT IS SO ORDERED.

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date:  October 30, 2025.